UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

MICHELLE SKREDE,

       Plaintiff,                         Case No.

v.

                                     Hon.

EMERGENT HOLDINGS, INC.

       Defendant.

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com

There is no other pending or resolved civil action arising out
of this transaction or occurrence alleged in the Complaint.

## COMPLAINT AND JURY DEMAND

Plaintiff Michelle Skrede ("Plaintiff"), by and through her attorneys, HURWITZ LAW PLLC, states the following for her Complaint against Defendant Emergent Holdings, Inc. ("Defendant"):

## INTRODUCTION

1.    Plaintiff Michelle Skrede submitted a religious accommodation request for exemption from Defendant's COVID-19 vaccine mandate in November 2021 and was terminated for not having "sincerely held religious beliefs" on January 5, 2022. Despite the Equal Employment Opportunity Commission ("EEOC") telling employers to "ordinarily assume that an

1

employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance," Defendant did the opposite.  Instead of respecting Ms. Skrede's religious beliefs, Defendant conducted a short, arbitrary interview with her regarding whether she had taken other vaccines or over the counter medications.  Defendant then ignored the EEOC's warning that employers "should not assume that an employee is insincere simply because some of the employee's practices deviate from the commonly followed tenets of the employee's religion, or because the employee adheres to some common practices but not others" and terminated Ms. Skrede based on Defendant's subjective standard of religiosity.  All the while, Defendant did not require the customers, vendors, or independent contractors on its premises to be vaccinated.

## PARTIES AND JURISDICTION

2. Plaintiff is an individual residing in Minneapolis, Minnesota.

3. Defendant is a domestic nonprofit corporation with a principal place of business located at 200 N Grand Ave, Lansing, MI 48933.

4. Plaintiff's claims arise out of Defendant's violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and the Minnesota Human Rights Act, Minnesota Statutes § 363A *et seq*.

5. The U.S. District Court for the Western District of Michigan has jurisdiction over the claim pursuant to 28 U.S.C. § 1331, as well as original diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Defendant is now, and at all relevant times was, a corporation duly organized and existing under the laws of the State of Michigan, and Plaintiff is now, and at all relevant times was, a citizen domiciled in the State of Minnesota.  Moreover, the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6. This matter is not subject to arbitration.

7. Venue is proper under 28 U.S.C. § 1391 because this is the judicial district where Defendant is headquartered.

8. Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination alleging religious discrimination and retaliation on December 10, 2021 and received her Right to Sue letter from the EEOC.

## FACTUAL ALLEGATIONS

### Defendant's Mandatory Vaccine Policy

9. Defendant announced a mandatory COVID-19 vaccine policy for "all employees and contractors, including those working remotely" on or about November 1, 2021.

10. Defendant required employees and contractors to be vaccinated by December 8, 2021.

11. Defendant never required visitors or vendors to be vaccinated.

12. The last day for employees to request accommodations to the vaccine mandate was November 11, 2021.

13. The decision whether to grant or deny religious and medical vaccine accommodations to over 250 applicants was made less than two (2) weeks later, on November 24, 2021.

14. Employees denied accommodation were automatically placed on unpaid leave of absence from December 9, 2021 until January 5, 2022.

15. Defendant's accommodation process was arbitrary and woefully inconsistent.

16. Defendant conducted a series of ambush-style interrogations with employees who submitted religious and medical accommodation requests.

17. Defendant's employees were not informed of questions ahead of time.

3

18. Attorneys for Defendant questioned employees, but employees were not allowed to be represented by legal counsel during questioning.

19. The interviewees were told that the interviews had a maximum time of fifteen (15) minutes in duration.

20. When employees asked questions, they were warned to just "answer the questions" or else they would be denied accommodation.

21. The interviewees were threatened to keep their answers short and to the point because time was "running out" and time was "limited."

22. Defendant told interviewees that it had not reviewed their written accommodation requests.

23. Defendant denied accommodation to interviewees with language barriers and/or difficulty answering questions due to medical conditions.

24. Defendant asked employees the following questions:

    a. Do you feel like the COVID-19 vaccines were rushed?
    b. What do you do when you are in physical pain?
    c. Do you take Aspirin, Sudafed, Tums, or Tylenol?
    d. Do your beliefs prevent you from receiving medical treatments?
    e. Do you have a primary care physician?
    f. Has your doctor ever prescribed medication?
    g. What would you do if your doctor prescribed medication?
    h. What medication have you taken?
    i. Have you always followed this religious belief?
    j. When was the last time you received a vaccination?

25. Employees were told that over-the-counter medications like Tylenol and Tums were developed and manufactured using stem cells.

26. However, the over-the-counter medications referenced by Defendant were developed decades before stem cell research was conducted.

27. Moreover, many of Defendant's employees were objecting to the COVID-19 for

religious reasons that had nothing to do with stem cell research.

28.     Defendant terminated approximately 250 employees who requested a religious accommodation to the COVID-19 vaccine on January 5, 2022.

29.     Defendant incentivized employees to retire early in 2020 in order to reduce staffing costs, but Defendant did not have to eliminate jobs in 2021 because it terminated unvaccinated employees.

30.     Defendant touts on job recruiting websites that it requires COVID-19 vaccination with "no exemptions."

31.     Employees denied accommodation to the vaccine mandate were forced into the horrible position of choosing between vaccination or termination:

> Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion . . . vaccine mandates . . . presents a crisis of conscience for many people of faith.  It forces them to choose between the two most profound obligations they will ever assume—holding true to their religious commitments and feeding and housing their children.  To many, this is the most horrifying of Hobson's choices.

*Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021).

32.     Defendant terminated remote employees, like Plaintiff, who remained unvaccinated despite those employees posing no discernible risk to their coworkers.

### Plaintiff's Religious Accommodation Request

33.     Plaintiff seeks to make all decisions, especially those regarding vaccination and other medical decisions, through prayer.

34.     The religious accommodation process mandates "bilateral cooperation" between employer and employee.  *Ansonia Bd. of Educ. v. Philabrook*, 479 U.S. 60, 69 (1986).

35.     No such "bilateral cooperation" occurred during Defendant's interrogation of its

employees or otherwise during the process.

36. The Equal Employment Opportunity Commission tells employers that a prototypical example of reasonable accommodation to the vaccine is being "given the opportunity to telework." U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021). "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id*. (Mar. 1, 2022).

37. President Daniel J. Loepp announced on or about December 7, 2021: "I want to thank all employees who are or are in the process to become fully vaccinated and encourage any employee who is not vaccinated to consider doing so."

38. President Daniel J. Loepp told Defendant's employees in the weeks prior to the vaccination deadline that he anticipated denying accommodation requests and terminating many employees.

39. Plaintiff received a letter from Human Resources on January 4, 2022, stating, "[t]his letter serves as notice that your employment is terminated effective January 5, 2022."

40. Title VII's statutory definition of "religion" includes "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(j).

41. The U.S. Equal Employment Opportunity Commission ("EEOC")[1] advises employers to "ordinarily assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance." U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021).

---

[1] Plaintiff filed with the U.S. Equal Employment Opportunity Commission ("EEOC") on February 12, 2022. Plaintiff will be amending to add claims under Title VII of the Civil Rights Act of 1964 ("Title VII").

6

42. An individual's testimony about his or her belief "must be given great weight" and is enough to demonstrate a sincerity. *Seeger*, 380 U.S. at 184 (1965).

43. Plaintiff's religious conviction is highlighted by the fact she remained unvaccinated in the face of termination, losing her livelihood in the process.

### Defendant Did Not Base Its Decision on Undue Hardship, Nor Could It Establish Undue Hardship

44. The prohibition against religious discrimination imposes a "duty" on employers to accommodate the sincere religious observances of employees, absent a showing of "undue hardship." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977). The employer bears the burden of showing "that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship." *McDaniel v. Essex Intern., Inc.*, 571 F.2d 338, 341 (6th Cir.1978).

45. An employer does not satisfy its burden of proving undue hardship "merely by showing that an accommodation would be bothersome to administer." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir.1975).

46. Defendant is not claiming undue hardship.

47. Defendant cannot allege undue hardship when other employees performing similar job duties were granted medical accommodations to the vaccine.

48. Defendant cannot allege undue hardship because Plaintiff was a remote worker.

### COUNT I
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.
### Religious discrimination – Failure to accommodate

49. Plaintiff restates the foregoing paragraphs as set forth fully herein.

50. At all times relevant hereto, Plaintiff was an employee and Defendant was her employer for the purposes of 42 U.S.C. § 2000e, *et seq*.

51. Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e *et seq*., makes it unlawful for an employer to fail or refuse to reasonably accommodate the religious beliefs and practices of an employee or prospective employee.

52. Title VII prohibits an employer from discriminating against an employee "because of such individual's... religion." 42 U.S.C. § 2000e-2(a)(1).

53. This "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate an employee's... religious observance or practice without undue hardship on the conduct of the employer's business." *Id*. § 2000e(j).

54. After receiving an accommodation request, "the employer is obligated by law to engage in interactive process – a meaningful dialogue with the employee[.]" *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (5th Cir. 2009).

55. The employer must act in "good faith," *Id*., and the employee must "make a good faith attempt to satisfy his needs through means offered by the employer," *Brener v. Diagnostic Ctr. Hosp*., 671 F.2d 141, 146 (5th Cir. 1982).

56. Title VII makes it unlawful for an employer to retaliate against an employee who engaged in protected activity.

57. Plaintiff holds sincere *bona fide* religious beliefs that preclude her from receiving a COVID-19 vaccine.

58. Plaintiff informed Defendant of those beliefs and requested religious accommodation from the vaccine mandate.

59. Defendant refused to engage in the interactive process with Plaintiff regarding her religious accommodation requests.

60. Under Title VII, Plaintiff can establish a *prima facie* case of religious discrimination based on a failure to accommodate by showing: (1) she has a *bona fide* religious belief that conflicts with an employment requirement; (2) about which he informed the [Defendant]; and (3) she suffered an adverse employment action for failing to comply with the conflicting employment requirement. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

61. Multiple accommodations could have been offered to Plaintiff. They include mask wearing and periodic testing for COVID-19—the very same accommodations being offered to virtually every public and private employee in the State of Michigan.

62. A "[r]easonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995).

63. Defendant would not suffer undue hardship by granting Plaintiff an accommodation. 42 U.S.C. § 2000e(j).

64. The issue became moot when Defendant failed to engage each employee in "a meaningful dialogue" about the accommodation request and learn whether an acceptable accommodation would impose undue hardship. *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (5th Cir. 2009).

65. Instead, Defendant announced a one-size-fits all approach to accommodation that deprived Plaintiff of the conversation necessary to discover what accommodations were possible. *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996) ("courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary" and "[a] party that fails to communicate... may also be acting in bad faith").

66. Irrespective of the interactive process, Defendant failed to provide Plaintiff with reasonable accommodations for his religious beliefs.

67. Defendant thereby discriminated against Plaintiff because of her religious beliefs.

68. Defendant's failure to provide religious accommodations has harmed and will continue to harm Plaintiff.

69. As a direct and proximate result of Defendant's violation of Title VII Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

70. As a further direct and proximate result of Defendant's violation of Title VII, Plaintiff has been denied employment and placed in financial distress and have suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

71. By failing to engage in the interactive process or offer any reasonable accommodation, Defendant's discriminatory actions were intentional and/or reckless and in violation of Title VII.

**COUNT II**
**Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.**
**Religious discrimination –retaliation**

72. Plaintiff restates the foregoing paragraphs as set forth fully herein.

73. At all times relevant hereto, Plaintiff was an employee and Defendant was her employer for the purposes of 42 U.S.C. § 2000e, *et seq*.

74. Title VII prohibits an employer from discriminating against an employee "because

of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). This "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j).

75. Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), it is unlawful for an employer: (1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's... religion; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individuals... religion[.]"

76. Plaintiff engaged in protected activity when she requested religious accommodations from Defendant's vaccine mandate.

77. Defendant responded by announcing that it would effectively terminate her employment.

78. Defendant responded to Plaintiff's protected activity by placing her on an unpaid leave of absence.

79. Unpaid leave of absence is an adverse employment action intended to force employees to abandon their religious beliefs.

80. Plaintiff's religious beliefs and protected activity were the causes of Defendant's adverse employment action.

81. By retaliating against Plaintiff for engaging in protected activity, Defendant has violated Title VII.

82. This violation has harmed and continues to harm Plaintiff.

## COUNT III
## Minnesota Human Rights Act ("MHRA")
## Religious discrimination – Failure to accommodate

83. Plaintiff restates the foregoing paragraphs as set forth fully herein.

84. At all times relevant hereto, Plaintiff was an employee and Defendant was her employer for the purposes of Minn. Stat. § 363A.01, *et seq*.

85. The MHRA makes it unlawful for an employer to fail or refuse to reasonably accommodate the religious beliefs and practices of an employee or prospective employee.

86. The Minnesota Court of Appeals has held that the MHRA requires employers to reasonably accommodate their employees' religious beliefs. *See, e.g., Benjamin v. Cnty. of Hennepin,* No. C8–96–1122, 1996 WL 679690, at *3 (Minn. Ct. App. Nov. 26, 1996).

87. Plaintiff holds sincere *bona fide* religious beliefs that preclude her from receiving a COVID-19 vaccine.

88. Plaintiff informed Defendant of those beliefs and requested religious accommodation from the vaccine mandate.

89. Defendant refused to engage in the interactive process with Plaintiff regarding her religious accommodation requests.

90. Multiple accommodations could have been offered to Plaintiff. They include mask wearing and periodic testing for COVID-19—the very same accommodations being offered to virtually every public and private employee in the State of Michigan.

91. Defendant would not suffer undue hardship by granting Plaintiff an accommodation.

92. Irrespective of the interactive process, Defendant failed to provide Plaintiff with

reasonable accommodations for his religious beliefs.

93. Defendant thereby discriminated against Plaintiff because of her religious beliefs.

94. Defendant's failure to provide religious accommodations has harmed and will continue to harm Plaintiff.

95. As a direct and proximate result of Defendant's violation of the MHRA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

96. By failing to engage in the interactive process or offer any reasonable accommodation, Defendant's discriminatory actions were intentional and/or reckless and in violation of the MHRA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

a. Compensatory damages for monetary and non-monetary loss;

b. Exemplary and punitive damages;

c. Prejudgment interest;

d. Attorneys' fees and costs; and

e. Such other relief as in law or equity may pertain.

Respectfully Submitted,

HURWITZ LAW PLLC

/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorneys for Plaintiff
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489

*noah@hurwitzlaw.com*

Dated: November 28, 2022

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

MICHELLE SKREDE,

       Plaintiff,	Case No.

v.

       	Hon.

EMERGENT HOLDINGS, INC.

       Defendant.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com

---

## **DEMAND FOR TRIAL BY JURY**

    Plaintiff Michelle Skrede, by and through her attorneys, Hurwitz Law PLLC, hereby demands a trial by jury in the above-captioned matter for all issues triable.

                                                    Respectfully Submitted,
                                                    HURWITZ LAW PLLC

                                                    */s/ Noah S. Hurwitz*
                                                    Noah S. Hurwitz (P74063)
                                                    *Attorney for Plaintiff*

Dated: November 28, 2022